J-S64033/15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN RE: ADOPTION OF: K.R.W., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: R.S.W., FATHER | No. 992 MDA 2015 |

Appeal from the Decree entered May 12, 2015,
in the Court of Common Pleas of York County,
Orphans' Court, at No(s): 20015-0037a

BEFORE: FORD ELLIOTT, P.J.E., WECHT, and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.:        **FILED DECEMBER 09, 2015**

Appellant, R.S.W. ("Father"), appeals from the decree entered in the Court of Common Pleas of York County Orphans' Court, terminating Father's parental rights to K.R.W. (born in May of 2004) ("Child"). We affirm.

At the time of Child's birth, Father was incarcerated, and he was released from prison seven months later. After Father was paroled, he lived with Mother, Child, and Mother's two other children from a previous relationship. In April of 2006, Mother and the children moved out of the house. Before Child turned two years old, Father was incarcerated and remained incarcerated until 2011. When Father was released from prison, Father remained in contact with Child. Mother agreed to take Child to paternal grandfather's home to visit Father every other weekend. Father last contacted Child in August of 2012. Father was again incarcerated in December of 2012 for retail theft, and remained incarcerated for two and

---

[*] Former Justice specially assigned to the Superior Court.

one-half years. Mother has lived with D.R. ("Stepfather") for approximately nine years. Mother and Stepfather married in 2013.

On April 9, 2015, Mother filed a petition to involuntarily terminate Father's parental rights to Child. On May 12, 2015, the trial court held a hearing on the termination petition. The trial court granted Father a transport order so that he could be present for the termination hearing. At the termination hearing, Mother, Father, and Stepfather testified. On May 12, 2015, the trial court entered its decree terminating Father's parental rights pursuant to 23 Pa.C.S. § 2511(a)(1) and (b).

On June 8, 2015, Father timely filed a notice of appeal, along with a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). Father raises the following issue on appeal.

> Whether the trial court erred as a matter of law and abused its discretion by granting the request of [Mother] to terminate [Father]'s parental rights when [Mother] failed to present clear and convincing evidence under 23 Pa.C.S.A. § 2511(a)(1)?

Father's Brief at 5.

Our standard of review regarding orders terminating parental rights is as follows:

> When reviewing an appeal from a decree terminating parental rights, we are limited to determining whether the decision of the trial court is supported by competent evidence. Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. Where a trial court has granted a petition to involuntarily terminate parental

- 2 -

rights, this Court must accord the hearing judge's decision the same deference that we would give to a jury verdict. We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence.

*In re S.H.*, 879 A.2d 802, 805 (Pa. Super. 2005). In termination cases, the burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. *Id.* at 806. We have previously stated: "The standard of clear and convincing evidence is defined as testimony that is so 'clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue.'" *In re J.L.C.*, 837 A.2d 1247, 1251 (Pa. Super. 2003).

The trial court "is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve all conflicts in the evidence." *In re M.G.*, 855 A.2d 68, 73-74 (Pa. Super. 2004). "[I]f competent evidence supports the [trial] court's findings, we will affirm even if the record could also support the opposite result." *In re T.B.B.,* 835 A.2d 387, 394 (Pa. Super. 2003). Additionally, this Court "need only agree with [the trial court's] decision as to any one subsection in order to affirm the termination of parental rights." *In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*).

In terminating Mother's parental rights, the trial court relied upon Sections 2511(a)(1) and (b) of the Adoption Act which provide as follows:

**(a) General Rule**.—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1)  The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

\*    \*    \*

**(b) Other considerations**.—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child.  The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.  With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(1), (b).

We have explained this Court's review of a challenge to the sufficiency of the evidence to support the involuntary termination of a parent's rights pursuant to Section 2511(a)(1), as follows:

To satisfy the requirements of section 2511(a)(1), the moving party must produce clear and convincing evidence of conduct, sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties.  In addition,

Section 2511 does not require that the parent demonstrate both a settled purpose of relinquishing parental claim to a child and refusal or failure to

- 4 -

perform parental duties. Accordingly, parental rights may be terminated pursuant to Section 2511(a)(1) if the parent either demonstrates a settled purpose of relinquishing parental claim to a child or fails to perform parental duties.

Once the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights, the court must engage in three lines of inquiry: (1) the parent's explanation for his or her conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of termination of parental rights on the child pursuant to Section 2511(b).

*In re Z.S.W.*, 946 A.2d 726, 730 (Pa. Super. 2008) (internal citations omitted).

Regarding the definition of "parental duties," this Court has stated:

There is no simple or easy definition of parental duties. Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this Court has held that the parental obligation is a positive duty which requires affirmative performance.

This affirmative duty encompasses more than a financial obligation; it requires continuing interest in the child and a genuine effort to maintain communication and association with the child.

Because a child needs more than a benefactor, parental duty requires that a parent exert himself to take and maintain a place of importance in the child's life.

Parental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every

problem, in order to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances. A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her physical and emotional needs.

*In re B., N.M.*, 856 A.2d 847, 855 (Pa. Super. 2004) (internal citations omitted).

On appeal, Father argues that the trial court erred in terminating his parental rights to Child. Father's Brief at 4. Father asserts that the trial court abused its discretion in holding that Father exhibited a settled purpose to relinquish his parental rights, because, according to Father, he has used all available resources to preserve his parental relationship, including while he has been incarcerated. *Id.* at 10-14. With regard to a parent's incarceration, in *In re S.P.*, 47 A.3d 817 (Pa. 2012), our Supreme Court reiterated the standard of analysis pursuant to Section 2511(a)(1) for abandonment and added as follows:

> [a]pplying [*In re McCray*, 331 A.2d 652 (Pa. 1975),] the provision for termination of parental rights based upon abandonment, now codified as § 2511(a)(1), we noted that a parent "has an affirmative duty to love, protect and support his child and to make an effort to maintain communication and association with that child." *Id.* at 655. We observed that the father's incarceration made his performance of this duty "more difficult." *Id.*

\* \* \*

> [A] parent's absence and/or failure to support due to incarceration is not conclusive on the issue of abandonment. Nevertheless, we are not willing to completely toll a parent's responsibilities during his or her incarceration. Rather, we must inquire whether the parent has utilized those resources at his or her command while in prison in continuing a close relationship with the child. Where the parent does not exercise reasonable firmness in declining to yield to obstacles, his other rights may be forfeited.

*In re S.P.*, 47 A.3d at 828 (citations omitted). Further, the Supreme Court stated, "incarceration neither compels nor precludes termination of parental rights." *Id.* (citation omitted).

The trial court found that, during six months prior to the filing of the termination petition, Father demonstrated a settled purposed of relinquishing his parental claim to Child or failed to perform parental duties. Trial Ct. Op., 7/9/15, at 10. Father was incarcerated approximately eight years of Child's life. *Id.* at 2. Father also testified he has not seen Child since September of 2012 at his grandfather's funeral. N.T., 5/12/15, at 35. Moreover, the trial court found that Father did not use all resources available to him in order to maintain contact with Child. Trial Ct. Op. at 8. The trial court found

> Father reports that his last in person contact with [Child] was in August 2012, at his grandfather's funeral. He's indicated that he would have sent cards and would have attempted to communicate, but that he did not have an address for [Child] or Mother. We find that Father has been unable to articulate any significant efforts that he made to attempt to get an address for Mother. It's clear

that he did have Mother's phone number and was able to contact her by phone, and it appears that some of his relatives did have some contact with Mother. Father was able to write and send items to maternal grandmother's address during a previous incarceration, he seems to remember that it was located on . . . and could have made some attempts to utilize a phone book or ask for assistance from the prison staff to determine the exact address. We also note that Father never pursued any legal action to obtain any visitation rights to [Child]. Although Father was mostly incarcerated, there were periods of time in between his incarceration where he could have contemplated seeking legal aid.

*Id.*

Mother testified that she encouraged Child to write letters to Father, but Child did not want to send Father letters. N.T., 5/12/15, at 15. Mother testified that, since 2012, Father has not sent mail or gifts to Child. *Id.* at 9. Mother testified that she resided at their current address for a period of nine years, and that Father knew of Mother's address. *Id.* at 10-11. Mother testified that she never withheld her address from Father even though he made threatening statements. *Id.* at 15. Mother also stated that Father always had maternal grandmother's address, and maternal grandmother's address never changed. *Id.* at 12. Moreover, Mother testified that when Father "goes to jail, no one in his family" contacts her. *Id.* at 18.

At the hearing, Father was scheduled to be released from prison to live in a half-way house in the state of New York. Father testified that he has a drug addiction, but he has family support and therapy for his addiction. *Id.* at 23-24. Father testified that for nine years he has not known where Child

lived, and that Mother would not tell him the address. *Id.* at 30. Father testified that when he was not incarcerated, he had no idea where Child lived because Mother and Child would meet Father at paternal grandfather's house or Old Navy Department Store parking lot. *Id.* at 34. While Father had Mother's phone number, he testified that he could not call Child from York County Prison because he needed a valid address in order to get approved. *Id.* at 27-28. Father testified that the last known address he had for Child was maternal grandmother's address, but Father could not remember the full address. *Id.* at 29. Father stated the first time he knew of Child's address was a few days before the termination hearing. *Id.* at 33. Furthermore, Father testified that if he knew Child's address he would have stayed in contact with Child. *Id.* at 29.

The record reveals that the trial court took into consideration Father's alleged desire to contact Child and prolonged periods of incarceration, but found that Father's failure to perform his parental duties was not due solely to his incarceration since Father had contact with Mother and could have contacted Child. Trial Ct. Op. at 8-9. The trial court found that there was no "significant efforts that [Father] made to attempt to get an address from" Mother. N.T., 5/12/15, at 41. Father's argument regarding Section 2511(a)(1) essentially asks this Court to make credibility and weight determinations different from those of the trial court. While Father may claim to love Child, a parent's own feelings of love and affection for a child,

alone, will not preclude termination of parental rights. *In re Z.P.*, 994 A.2d 1108, 1121 (Pa. Super. 2010). We stated in *In re Z.P.*, a child's life "simply cannot be put on hold in the hope that [a parent] will summon the ability to handle the responsibilities of parenting." *Id.* at 1125 (citation omitted). Rather, "a parent's basic constitutional right to the custody and rearing of his or her child is converted, upon the failure to fulfill his or her parental duties, to the child's right to have proper parenting and fulfillment of his or her potential in a permanent, healthy, safe environment." *In re B., N.M.*, 856 A.2d 847, 856 (Pa. Super. 2004). Consequently, Father's issue on appeal lacks merit, and we find no abuse of discretion in the trial court's evaluation of Section 2511(a)(1) with respect to Father.

The trial court must also consider how terminating Father's parental rights would affect the needs and welfare of Child pursuant to 23 Pa.C.S. § 2511(b). Pursuant to Section 2511(b), the trial court's inquiry is specifically directed to a consideration of "whether termination of parental rights would best serve the developmental, physical and emotional needs . . . of the child." *In re C.M.S.*, 884 A.2d 1284, 1286-87 (Pa. Super. 2005). "Intangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." *Id.* at 1287 (citation omitted). We have instructed that the court "must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond." *Id.*

While Father did not contest Section 2511(b) on his appeal, we will review whether termination of parental rights would best serve the developmental, physical and emotional needs of Child. *In re C.L.G.*, 956 A.2d 999, 1004 (Pa. Super. 2008) (*en banc*) (citation omitted) (stating that only after determining that the parent's conduct warrants termination under subsection (a) must a court engage in the analysis under subsection (b)). The trial court found that terminating Father's parental rights would be in the best interest of Child. Trial Ct. Op. at 10. The trial court found that Child "has found permanency and stability while residing with Mother and Stepfather." *Id.* Child has resided with Mother and Stepfather for the majority of Child's life. *Id.* Mother testified that Stepfather has financially provided for the Child and performed parental duties such as aiding in Child's homework and taking her to activities. N.T., 5/12/15, at 10. Mother testified that Stepfather is a father figure to Child. *Id.*

In the instant case, on the issue of bonding, our review of the record reveals no evidence of a bond between Father and Child. The trial court found that Father did not establish a significant bond with Child. N.T., 5/12/15, at 42. Mother testified that Child did not want to send letters to Father. *Id.* at 15. Father testified that his relationship with Child was "a little rocky, but as time went on, things started getting better." *Id.* at 27. Father stated that "it took [Child] a little while to warm up to [him], get used to [him] again, but then there [were] periods where she would get

used to [him], and I wouldn't see [Child] for a month or two." ***Id.*** Father testified that Mother impeded his visits with Child. ***Id.*** Father testified that he loves Child and wants to be a part of her life. ***Id.*** at 29, 39. We have stated, "In cases where there is no evidence of any bond between the parent and child, it is reasonable to infer that no bond exists." ***In re K.Z.S.***, 946 A.2d 753, 762-63 (Pa. Super. 2008).

After this Court's careful review of the record, we find that the competent evidence in the record supports the trial court's determination that there was no bond between Father and Child which, if severed, would be detrimental to Child, and that the termination of Father's parental rights would best serve the needs and welfare of Child. Thus, we will not disturb the trial court's determinations. ***See In re M.G.***, 855 A.2d at 73-74.

After a careful review, we affirm the decree terminating Father's parental rights on the basis of Section 2511(a)(1) and (b).

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/9/2015

- 12 -